# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| JAMES E. SHELTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>AMERICAN BUSINESS SERVICES INC.<br>D/B/A FUNDING 770<br><br>AND<br><br>NARIN CHARANVATTANAKIT<br><br>Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff James E. Shelton ("Mr. Shelton"), by his undersigned counsel, for this class action complaint against Defendants American Business Services Inc., doing business as Funding 770, and Narin Charanvattanakit, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

### I.     INTRODUCTION

1.  Nature of Action: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between

'[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)."

Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II.   PARTIES

5. Plaintiff Shelton is an individual who resides in the Eastern District of Pennsylvania.

6. Defendant American Business Services Inc., doing business as Funding 770, is a corporation with its headquarters and primary place of business in Denver, Colorado.

7. Defendant Narin Charanvattanakit is an individual who is the owner of Funding 770 and its many DBAs and shell companies and resides at 121 Turquoise, Irvine, CA 92620.

## III.   JURISDICTION AND VENUE

8. <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9. <u>Personal Jurisdiction</u>: The Court has general personal jurisdiction over Defendant American Business Services Inc. because it is a corporation with its headquarters and primary place of business in this District. The Court has specific personal jurisdiction over the misconduct of its corporate owner, officer, and director, which masterminded the illegal conduct described herein to be orchestrated from this District.

10. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—was orchestrated from this District.

## IV.  FACTS

### A.  The Enactment of the TCPA and its Regulations

11. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

### B.  Unsolicited Telemarketing to Plaintiff

16. Plaintiff Shelton is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17. Plaintiff's residential telephone number is (484)-XXX-XXXX, he registered it on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

18. Mr. Shelton uses the number for personal, residential, and household reasons.

19. Mr. Shelton does not use the number for business reasons or business use.

20. The number is a residential telephone line because it is not assigned to a telephone exchange service for businesses.

21. Plaintiff Shelton never consented to receive calls from Defendants.

22. Plaintiff Shelton never did business with the Defendants.

23. Despite this, Plaintiff received a total of at least fourteen (14) automated telephone calls and text messages from Defendants' number 213-232-1746 as part of a telemarketing campaign. The calls were sent between November 24, 2023 and November 27, 2023.

24. The calls all came from Defendants' employee, John Misich, at Funding 770.

25. Funding 770 is an unregistered fictitious name used by the true Defendants in this matter, American Business Services Inc and the owner of both, Defendant Narin Charanvattanakit.

26. Indeed, American Business Services and Funding 770 have the same website content and designs, as reproduced on the following page:





6

27. In fact, the websites both list the same callback number, 888-850-1330.

28. When that number is Googled, the business listing on Google, which a business must itself create, reflects that the number is associated with the Defendant American Business Services' Houston, Texas office:



29. Indeed, counsel for the Plaintiff undertook an investigation and that investigation revealed that when the 888-850-1330 number is called and the caller requests to speak with someone at Funding 770, the caller is told that Funding 770 is just one of multiple marketing names used by the Defendants.

30. The aforementioned calls and text messages to the Plaintiff were unwanted.

31. The calls were nonconsensual encounters.

7

32. In fact, the Plaintiff requested multiple times, both during the first call on November 24, 2023, and in writing on November 28, 2023 via email that the calls stop but they did not stop.

33. The first call from Defendants occurred on November 24, 2023 at 1:07 PM.

34. During this call, the Plaintiff spoke with Defendants' employee, John Misich, and asked not to receive any future calls back.

35. Plaintiff's do-not-call request was not honored.

36. Indeed, on the third call which occurred on November 24, 2023 at 2:55 PM, the Defendants' employee, John Misich stated on a voicemail, "Mr. Shelton, I know that you told me to not to call you but I'm just waiting for your email with bank statements."

37. Mr. Misich also harassed the Plaintiff from his company email, [johnmisich@funding770.com](johnmisich@funding770.com).

38. In fact, on November 28, 2023, in response to another request that the Defendants refrain from contacting the Plaintiff, Defendants' employee, John Misich, stated via email, "James ,of course i blow up your phone because i want commission."

39. All the calls were made in an attempt to sell the Plaintiff a business loan.

40. Plaintiff's privacy has been violated by the above-described telemarketing messages.

41. Plaintiff never provided his consent or requested these messages.

42. Under the TCPA, an individual such as the individual Defendants may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his

8

employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

43. Defendant Narin Charanvattanakit has developed a small empire of shell companies operated for the sole purpose of violating the TCPA to sell the aforementioned business loans through massive telephone spam to individuals throughout the United States. When one of the companies is sued or garners enough negative press, Defendant Charanvattanakit simply winds up corporate operations and opens another company in an endless game of corporate whack-a-mole that bastardizes the corporate form.

44. Charanvattanakit's former companies included Capital Alliance Group and Bankroll Capital, which federal court records reveal have both been sued numerous times for TCPA violations.

45. Defendants, including Charanvattanakit personally, intentionally seek to misdirect the source of the illegal calls and abuse the protections and structures afforded corporate forms as a way to hide their violations of the TCPA.

46. The allegations in *Paisley v. Bankroll Capital Inc.* prove particularly illuminating as to how Defendant Charanvattanakit operates American Business Services, Funding 770, and his other associated shells as mere fronts used to hide and escape liability for TCPA violations. No. 0:23-cv-61913-WPD (S.D. Fla. filed Nov. 27, 2023).

47. Defendants Funding 770 d/b/a American Business Solutions and Charanvattanakit act interchangeably, as described in that litigation as well as other litigation, such as *Scofield v. Bankroll Capital, Inc.*, No. 8:22-cv-01515-JWH-KES (C.D. Cal.).

48. Defendant Funding 770 d/b/a American Business Solutions also uses the address 500 Technology Drive, Irvine, CA 92618, which is an address used by Bankroll Capital Inc and

9

Defendant Charanvattanakit's other companies, including another Funding 770-like fictious name called Unlock Capital.

49. Indeed, the Unlock Capital website, which previously had an application agreement, now merely goes to Defendant American Business Solution's website.

50. This misdirection is a strategy of Defendants that is the subject matter of a lawsuit brought by Direct Funding Now, LLC. *Direct Funding Now, LLC v. Bankroll Capital, Inc.*, No. 30-2023-01356226-CU- BT-NJC (Super. Ct. Orange Cnty. Cal., filed Oct. 10, 2023). That complaint describes a scheme in which Bankroll and Defendants ABS and Charan make unsolicited telemarketing calls, but do so in a way that leaves the recipients with the impression that other parties, including innocent third parties, are responsible for the TCPA violations and/or any bad publicity.

51. In sum, Charanvattanakit is the head of multiple companies that have been sued for TCPA violations, is aware of the TCPA, but continues to personally authorize such TCPA violations and deceptive and distracting tactics as a way to hide his own violations of the TCPA purportedly carried out only in such companies' names.

52. Charanvattanakit personally participated in the actions complained of by: (a) personally authorizing the illegal calls; (b) personally creating and masterminding the aforementioned scheme whereby multiple unregistered fictitious names, corporate entities, and shells are used in an attempt to hide blatant violations of the TCPA; (c) personally overseeing the fake corporate Defendants' entities, names, and marketing efforts, which included the use of fictitious names in carrying out illegal telemarketing for new client marketing and intake; (d) personally generating business from and personally supporting the telemarketing calls complained of herein; (f) personally refusing to take responsibility for such calls purportedly

10

only carried out in such companies' names, including personally directing a policy of not maintaining do not call lists or policies as required by law and making it impossible to make such requests; and (g) failing to take any action when presented with multiple complaints regarding TCPA violations and indeed continuing to perpetrate and orchestrate such violations.

53. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## V. CLASS ACTION ALLEGATIONS

54. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of American Business Services Inc or another company revealed to be owned, operated, or subject to the control of Narin Charanvattanakit (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

55. Excluded from the Class are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

56. The Class, as defined above, is identifiable through telephone records and telephone number databases.

57. The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

58. Individual joinder of these persons is impracticable.

59. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

60. Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the class members.

61. Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied them from receiving legitimate communications.

62. This class action complaint seeks injunctive relief and money damages.

63. There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

   a. whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

   b. whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

   c. whether Defendants have unlawfully abused the legitimate protections afforded corporate forms as a way of hiding the TCPA violations they perpetrated; and

   d. whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

64. Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

65. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

66. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

67. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

68. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

69. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

70. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

71. Defendants' violations were negligent, willful, or knowing.

72. As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

73. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to

telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E. An award to Plaintiff and the Class of damages, as allowed by law; and

F. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.     DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this March 20, 2024.

>  */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com

15

*/s/ Anthony Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100


*Attorneys for Plaintiff and the Proposed Class*

16